IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED
JAN 0 4 2018
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

ARIC W HALL,
    Plaintiff

v.

CAPELLA UNIVERSITY,
    Defendant

Case #: 18cv27 DSD|HB

JURY TRIAL

## CIVIL COMPLAINT

**To the Honorable U. S. District Court:**

### JURISDICTION, VENUE, & LIMITATIONS

1. The U. S. District Court has Diversity Jurisdiction as Plaintiff resides in Texas, and Defendant is a business entity with physical facilities solely in Minnesota (28 U.S.C. § 1332). Minneapolis is the appropriate venue as Defendant resides in or operates from Minneapolis (28 U.S.C. § 1391(b)(1) & § 1391(c)(2)). The subject matter of this suit accrued in February of 2012, within the six-year statute of limitations for fraud and other liability created by law (Minn. Stat. 541.05 Subd. 1. (2&6)) [1].

### PRIOR PROCEEDING

2. A previous action was filed in this matter [2]. The judge dismissed multiple points, arguing that they were each stand-alone causes of action, most of which were past limitations. Plaintiff argued that those points were only included to establish a long-running history of fraud and deception by Capella University. The causes of action based upon Plaintiff's disenrollment in



---

[1] Plaintiff was disenrolled during Jan. 2012, had multiple communications in Jan. 2012, had phone discussions about disenrollment in Feb. 2012, and had other survey phone calls even later.
[2] *Hall v. Capella University*, No. 16-cv-223 (D.Minn. 2016)

January/February 2012 – were dismissed without prejudice [3], allowing the instant case to be filed on that matter once more.

### 1st CAUSE OF ACTION: FRAUD & FRAUDULENT MISREPRESENTATION

3.   The tort of fraud exists with: (1) a false representation of a material fact; (2) knowledge by the entity making the false assertion that it is false; (3) an intention to induce the Plaintiff to act; (4) Plaintiff was induced to act on the misrepresentation; and (5) Plaintiff suffers damage proximately caused by the misrepresentation [4].

### 2nd CAUSE OF ACTION: FALSE ADVERTISING

4.   False advertising exists where Defendant falsely advertised its PhD offerings, falsely misrepresented the terms of purchasing that degree, made misrepresentations as to the terms of achieving graduation, made misleading and deceptive statements, and had no intention of selling the service or program as advertised [5]. This conduct is explained in the Facts Section, and is the result of deceptive catalogs, emails, letters, and recruiting propaganda sent to Plaintiff or posted on Defendant's website, and the subsequent email and phone communications during the dissertation phase. Plaintiff's only remedy under these two statutes is injunctive or equitable relief, and Plaintiff seeks exactly that [6].

### NOT AN ACTION FOR EDUCATIONAL MALPRACTICE

5.   In the previous case filed on this matter, defense counsel attempted and succeeded in confusing the district court judge into believing this was an issue of educational malpractice. Plaintiff did not allege educational malpractice, nor does he now. There was no issue of a lack of student services, quality of instruction, or any other discretionary function at issue. It was solely

---

[3]   *Hall v. Capella University*, No. 16-cv-223 (D. Minn. 2016), ecf # 25, pg. 6
[4]   *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).
      *Vandeputte v. Soderholm*, 216 N.W.2d 144, 146 (Minn. 1974).
[5]   Minn. Stat. §§ 325D.44, subd. 1(9); & 325F.69
[6]   Minn. Stat. §§ 325D.45; & 325F.70

the refusal to allow Plaintiff to work on the dissertation phase, by dishonoring milestone deadlines, having an absent dissertation advisor, having no contact to work with or get approvals from, and as such, an outright fraud on the Plaintiff.

**FACTS**

6. Defendant promised a degree upon completion of the degree requirements, but has repeatedly prohibited Plaintiff from fulfilling those requirements: assigning a dissertation advisor who would not respond or work with Plaintiff; failing to sign off on dissertation milestones or advising Plaintiff on how to satisfy the same; and stating in secret e-mails that Plaintiff would be disenrolled in violation of the milestone deadlines and guidelines. Defendant offered enrollment in a PhD program. Plaintiff accepted the terms. Plaintiff gave $120,000 and years of coursework in consideration. The parties agreed to the terms, conditions, and policies en route to that degree. Plaintiff relied on the promises, policies, catalog, and stated deadlines, to the extent of expending $120,000 and a decade of his life, only to be denied the opportunity to even work on the dissertation.

7. For three years, from 2009-2012, Plaintiff was left in limbo as to whether he was enrolled or disenrolled at Capella. Capella accidentally carbon copied an e-mail to Plaintiff, where a group of Capella faculty and/or advisors were planning to disenroll Plaintiff, without telling Plaintiff. This happened twice, with two different dissertation advisors. Plaintiff made contact with university officials, and was ignored on multiple occasions. Plaintiff was still paying full-price tuition for those terms that he was supposedly disenrolled. Plaintiff also requested a refund, which was not given. All of this was in violation of the existing milestone deadlines and policies established by the university. Defendant intentionally and constructively barred Plaintiff from completing the degree requirements.

8. In 2011, Plaintiff submitted draft copies of his dissertation template, or draft working document to his new dissertation advisor. Each time there was no response. Plaintiff opines that the advisor just lost patience and ceased dealing with Plaintiff, despite that Plaintiff had not missed one deadline or violated one policy. Capella University refused to grant a refund, an extension, or a new dissertation advisor. Plaintiff was not allowed to work on the dissertation milestones, was not allowed contact with the dissertation advisor, was not given milestone approvals, and had no contact with the point of contact who is required to communicate with a student during the dissertation phase. Yet, Defendant still took three years worth of tuition monies during that same phase.

9. Plaintiff was disenrolled in February 2012, and during that month, university advisors stated that they would continue to research the matter and press for an extension, and even to seek a new dissertation advisor. There was no subsequent response. This was just another deception to string Plaintiff along, in the expectation that an extension would be given, an advisor would be assigned, and the academic work would continue.

10. A cursory review of student feedback and survey websites shows that many other disillusioned students have complained of lack of support from Capella University, especially at the Dissertation phase, just as Plaintiff has experienced. Perhaps these individuals can be called to testify at trial. Upon entering the Dissertation Phase of the program, Plaintiff observed in the course rooms that 50% of those who entered the Dissertation phase did not complete it. This is an appalling statistic, supporting what other disenrolled students have claimed, that the university provided no support, contact, or response to students in the Dissertation phase. Others students complain of waiting two years to get a dissertation proposal approved. And, a consulting firm working with Harvard students has stated that the dissertation proposals rejected by Capella

would have been approved at Harvard. Many students were also intentionally and constructively barred from completing their degrees.

**11.** The Minnesota Supreme Court held that the courts shall intervene when university officials act capriciously or arbitrarily [7], and that was involving a state university that normally enjoys state immunities. Surely, the courts are more willing to intervene in the arbitrary and fraudulent affairs of a private institution!

## DAMAGES

**12.** Plaintiff seeks damages as follows:

| | | |
|---|---|---|
| $ | 120,000 | Money spent at Capella, with books/materials, and residencies, without a PhD |
| $ | 700,000 | Lost income while wrestling with Capella - 14yrs x $50,000 |
| $ | 750,000 | Lost earnings capacity, est. $25,000 reduction in income for 30 yrs. |
| $ | 150,000 | Inflationary effects on living costs and lost income over time |
| $ | 65,000 | Interest costs on debt for Capella program, est. for increasing balance and number of years denied the PhD: over 14 years. |
| $ | 148,482 | Adjustment for higher taxes for lump sum distribution on these damages. |
| $ | 70,000 | Tuition/fees/books to start over from scratch in a doctoral program |
| $ | 74,000 | Living stipend for 3 yrs while repeating a doctoral program |
| **$ 2,077,482** | | **Total Compensatory Damages** |

**13.** The use of Minnesota's "out-of-pocket" rule would limit a Plaintiff to recovering only the actual cash expended, failing to make the Plaintiff whole again. The compensatory losses to Plaintiff are far reaching beyond the actual $120,000 that Plaintiff put on the table. The jury may award consequential damages resulting from the fraudulent misrepresentation, rather than being limited by the "out-of-pocket" rule, but may not award damages based on wild speculation of lost future earnings or profits [8]. Plaintiff invokes the "benefit-of-the-bargain" rule, asking for an award of damages that reasonably and minimally resulted from Defendant's fraud and misrepresentation, for injury that would not have occurred but for the Defendant's conduct.

---

[7] *Abbariao v. Hamline University School of Law*, 258 N.W.2d 108 (1977)
[8] *B. F. Goodrich Co. v. Mesabi Tire Co., Inc.*, 430 N.W.2d 180 (Minn. 1988).

## CONCLUSION AND PRAYER

**14.**   Plaintiff shows an established pattern of behavior on the part of Capella University to deceive and defraud Plaintiff, to engage in deceptive business/trade practices through false advertising, and to save money by cutting mandatory services via the dissertation advisor/committee. These actions were intentional misrepresentations to induce Plaintiff to tendering payment to Defendants on the false expectations of a PhD and other benefits as spelled out above. Defendant received $48,000, in the dissertation phase, and spent nothing in return

**15.**   Plaintiff asks the Court to require specific performance and equitable and injunctive relief in the fulfillment of the terms agreed to between Plaintiff and Defendant, allowing Plaintiff to complete his dissertation, providing a two-year window, with the required provision of a dissertation advisor and committee who will actually communicate with Plaintiff and sign off on the milestones and completion of the dissertation when appropriate. This will be satisfied with the award of a "PhD in Organization and Management, with a Specialization in Leadership".

**16.**   Plaintiff also asks for an award of compensatory damages of $ 2,077,482 [9], and all costs as he shall show himself entitled.

**Respectfully,**

*/s/ Aric W Hall/*

Aric W Hall, Plaintiff

P. O. Box 952
Bullard, TX  75757
(903) 894-8780
arichall@yahoo.com

---

[9]   Plaintiff is not allowed to state a demand for punitive/exemplary damages in the Original Civil Complaint (Minn. Stat. § 549.191).